JENNIE D. HARVEY *et al.*

*v.*

THE AURORA AND GENEVA RAILWAY COMPANY.

*Opinion filed June 21, 1900.*

| 186 | 283 |
| 201 | ⁷514 |
| 186 | 283 |
| 104a | ⁷ 89 |
| 186 | 283 |
| 205 | ¹168 |

1. STREET RAILWAYS—*right to diverge from street does not depend upon judgment of city council.* The right of a street railway company to diverge from the highway and go upon private property depends upon the necessities of construction as a question of fact, and not upon the judgment of a city council.

2. SAME—*city council cannot fix route over private property.* A city council has no power to fix a route for a street railway company over private property or prohibit a route over particular private property, and its action in so doing is a nullity.

3. SAME—*paragraph 25 of section 1, article 5, of the City and Village act, does not apply to street railways.* Paragraph 25 of section 1, article 5, of the City and Village act, authorizing the city council "to provide for and change the location, grade and crossings of any railroad," applies to general or commercial railroads, and not to street railways.

4. SAME—*council cannot consent to use of streets without public notice.* A city council has no right to grant to a street railway company authority to use the public streets for its tracks, unless at least ten days' public notice of the time and place of presenting the railway company's petition shall have first been published. (Laws of 1899, p. 332.)

5. SAME—*when ordinance granting right to lay tracks becomes a contract.* When an ordinance granting to a street railway company, for an adequate consideration, the right to lay tracks upon certain streets has been accepted and its conditions performed by the railway company, it ceases to be a mere license and becomes a valid and binding contract.

6. SAME—*what not a condition precedent to right to condemn private property.* Authority to cross a public street after passing through private property is not a condition precedent to the right of a street railway company to condemn its route over such private property.

7. RES JUDICATA—*doctrine is not confined to matters actually determined.* The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also extends to any other matter which might have been raised and determined in it.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. CHARLES A. BISHOP, Judge, presiding.

EDWARD O. BROWN, for plaintiffs in error.

ALBERT J. HOPKINS, FRANK H. THATCHER, and FRED A. DOLPH, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This case is before us for the third time. Defendant in error was incorporated under the general act concerning corporations, in force July 1, 1872, for the purpose of constructing and operating a street railway. It located and constructed its railway in streets and highways, with the consent of the proper authorities, from a point in the city of Aurora to and through the city of Batavia and from thence to a point in the highway south of the city of Geneva, and obtained permission from the city of Geneva to construct and operate its railway in Sixth street and Campbell street in said city. Between said point in the highway south of Geneva and the south end of Sixth street it located its railway over private property, deflecting to the east from the public highway and passing under the Chicago and Northwestern railway and over premises owned by plaintiffs in error and others to the south end of Sixth street. It filed its petition in the circuit court of Kane county to ascertain the compensation to be paid to the owners of such private property. No necessity was shown for departing from the highway, but the court refused to dismiss the petition on motion of the property owners. Plaintiffs in error and others brought before us the record of that ruling, and we reversed it. (*Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295.) We fully recognized the rule that the exercise of the power of eminent domain is a legislative question, and that the legislature of the State, representing the

public at large, have paramount authority to delegate
the exercise of that power to a corporation so long as
the use is a public one, but we held the rule subject to
the limitation that the taking must be within the power
delegated by the legislature. A street railway is a road
constructed on a street or highway with the principal
object of accommodating street travel, and it can only
be a street railway and fulfill that object by following
the public street or highway, except in cases of tem-
porary divergence under exceptional conditions. The
courts will protect the property owner from an abuse
of the power to take private property, delegated to such
corporations, in case of necessity.

The record contained no evidence whatever that it
had become necessary to leave the public highway and
go across private property in the construction or oper-
ation of the road, and there was evidence that it was
wholly unnecessary. The cause was re-instated in the
circuit court, and defendant in error amended its petition
by setting up specifically a necessity for deflecting from
the highway and taking private property, and the rea-
sons therefor. The circuit court heard the evidence on
that question and dismissed the petition. Defendant in
error appealed from that decision, and the case was here
for the second time. The evidence in the record on that
hearing proved the existence of such obstacles in the
public highway and such dangers to the public in the
practical operation of the road that the necessity for
deflecting from the public highway contemplated by the
statute had arisen, and the right to appropriate the pri-
vate property of plaintiffs in error on which the road was
located was within the power delegated by the legisla-
ture to street railways. We therefore decided that de-
fendant in error had established its right, under the law,
to condemn the property sought to be taken as described
in the petition, and that the circuit court erred in its
judgment denying it that relief. The judgment was ac-

cordingly reversed and the cause remanded, with directions to proceed in conformity with the views expressed in the opinion then filed. (*Aurora and Geneva Railway Co. v. Harvey,* 178 Ill. 477.) In pursuance of the directions so given, the defendant in error, as petitioner in the circuit court, served notice upon defendants to its petition that on Monday, April 17, 1899, it would apply to the circuit court to re-instate the case and proceed to a final disposition of it. On the Saturday night preceding such application the city council of the city of Geneva passed an ordinance, as follows:

"Sec. 1. The said Aurora and Geneva Railway Company, its successors or assigns, may, subject to all private rights which may be involved, and subject to said further conditions as may be imposed by ordinance when said railway company shall have definitely and precisely adopted a route within the limits of this ordinance, locate its right of way within the city limits of Geneva as follows, and not otherwise, namely: Along Batavia avenue, or any part thereof, from the southern city limits northward; along Shady avenue, or any part thereof; across private property in passing from one of the said streets to the other, provided the consent of the owner or owners of such private property be first obtained; across or along Cheever avenue and across private property from the north end of Shady avenue northward to the right of way of the Chicago and Northwestern Railway Company, provided the consent of the owner or owners of such private property be first obtained; over the right of way of the Chicago and Northwestern Railway Company not east of where Sixth street extended southward would cross said right of way, or under said right of way at some point west of the Chicago and Northwestern Railway Company's depot and near the tunnel or culvert through which the brook passes; from the point of emergence after so passing under the right of way of the Chicago and Northwestern Railway Company west-

ward over private ground, provided the consent of the owner or owners thereof be first obtained, parallel with said right of way and not more than fifty feet distant from the northern limit thereof, to land which would be in Sixth street if that street were extended southward to said north limit of the right of way of the Chicago and Northwestern Railway Company; northward on property which would be in Sixth street if so extended southward, as aforesaid, to South street, provided the consent of the owner or owners of said property be first obtained; across South street to Sixth street; along Sixth street to State street; along Campbell street from Sixth street to the court house; along Bridge street from Batavia avenue to First street; along First street to State street; along any street or streets from First street to the county court house.

"Sec. 2. Any location for said railroad not in this ordinance expressly allowed is hereby prohibited, including the route at present proposed by said railway company.

"Sec. 3. This ordinance is passed under power conferred in and by paragraph 25 of section 1, article 5, of the general Incorporation act for cities and villages, and is to be construed as a provision for the location by the said railway company of its line within the city limits of Geneva and not as a grant of rights in any street, and the determination whether such rights shall be granted is reserved until a petition for the same shall be presented by the railway company under and in accordance with the provisions of paragraph 90 of said section 1, article 5.

"Sec. 4. Final action may be taken on this ordinance immediately upon its introduction or at any time thereafter, and the same shall take effect and be in force from and after its passage."

On April 17, 1899, the cause was re-instated according to notice, and plaintiffs in error entered their motion to dismiss the petition. No public right or interest was represented by the plaintiffs in error, but their motion

related only to private rights and was grounded upon the said ordinance, by which the city council had forbidden the location of the railway upon their lands. The court heard the evidence of the parties in support of the motion and against it. The ordinance in question was offered in evidence, and it further appeared that there had been an ordinance of the city that all ordinances being presented and read should lie over for at least one week before final action should be taken thereon. On April 10, 1899, an ordinance was passed purporting to amend that ordinance so as to provide that ordinances should lie over at least one week, unless otherwise provided by a two-thirds vote of the city council, and this amendatory ordinance of April 10. was passed without complying with the general ordinance which it amended. The following communication to the city from one of the plaintiffs in error was also admitted in evidence:

"GENEVA, *April 22, 1899.*

"*To the Hon. Mayor and City Council of Geneva:*

"It having been represented that there is danger of the city's becoming involved in expensive litigation on account of the ordinance providing for the location of the route of the Aurora and Geneva Railway Company, passed April 15, 1899, I hereby state that it is my *bona fide* intention to assert and test by proper proceedings in the courts, including the Supreme Court of Illinois, if necessary, the force and validity of that ordinance in the protecting. of my property. This ought to render unnecessary any litigation by or against the city in the matter. I desire to add, however, that in case the ordinance be allowed to stand unrepealed, if the city should become involved in litigation on account of it I will bear all necessary expenses of such litigation and relieve the city wholly therefrom.     "Very respectfully,     CHAS. POPE."

It was also proved that the city council, two years before this time, on April 27, 1897, by ordinance granted to petitioner consent and the right to use, locate, lay down tracks, maintain and operate for a period of twenty years its railway tracks and appurtenances in, upon and

along Sixth street, from South street to Campbell street and on Campbell street from Third street to Sixth street. This ordinance was accepted by the petitioner. Afterwards, the city council extended the time for building the road in Sixth street and Campbell street, with the additional requirements that petitioner should grade and gravel the street from curb to curb, put in all necessary culverts and pay the city $100 a year during the first five years. The petitioner accepted the additional burdens and expended $3500 in complying with the conditions and built its road in such street. The petitioner settled with and paid the owners of various tracts of land along the route through the private property set out in the petition, and constructed a subway under the Chicago and Northwestern railway on said route.

The court overruled the motion to dismiss the petition and proceeded to a trial before a jury, which ended in a verdict fixing the compensation and damages to be paid to the owners of the various tracts embraced in the petition. Judgment was entered on the verdict. No question is raised or error assigned as to the amount of compensation or anything that occurred at the trial. The bill of exceptions embraces only the motion to dismiss and the proceedings thereon, and the errors assigned relate only to the refusal of the court to sustain the motion and dismiss the petition.

Plaintiffs in error, in support of their assignments of error that the circuit court erred in not dismissing the petition, rely upon the ordinance of April 15, 1899, above recited, prohibiting the location of the railway over their lands and naming another route. The lands of the plaintiffs in error Jennie D. Harvey, William P. Harvey, Sarah J. B. Crittenden and Frank A. Crittenden are not within the city of Geneva, and, of course, that city would have no jurisdiction, in any event, to locate that part of the railway or to change or prohibit its location on their lands outside of the city. The tracts owned by the plain-

tiffs in error Annie M. Peckham and Charles Pope are within the city of Geneva, and the question as to the power to pass the ordinance and the effect of it as to their lands may properly be considered. The power is claimed by virtue of paragraph 25, section 1, article 5, of the act for the incorporation of cities and villages, and the ordinance recites that it is passed under power conferred by that paragraph. It is contended, on the other hand, that the ordinance was never legally passed. because it was presented and passed at the same meeting of the city council, in violation of the city ordinance requiring it to lie over at least one week: It was passed under the provisions of the ordinance of April 10, purporting to amend the ordinance establishing a rule of procedure, and that amendatory ordinance was passed in violation of such rule, but we will not consider the question whether the ordinance of April 15, relating to petitioner's route, was legally passed or not, for various reasons. ,

In the first place, the ordinance cannot be regarded as an exercise of the power to provide for or change the location of a railroad, conferred by paragraph 25. Manifestly, an ordinance cannot be regarded as the location of a railway, or the provision for such location, unless the railway company may lawfully go upon the proposed route. In the case of a street railway, the right to diverge from the street or highway and go upon private property depends upon the necessities of construction and operation as a question of fact, and not upon the judgment of any city council. The statute authorizes such a taking of private property in cases of necessity, when the railway may diverge from the street or highway and return thereto when the obstacle or necessity for such divergence has passed or ceases to exist. We considered that question in *Dewey* v. *Chicago and Milwaukee Electric Railway Co.* 184 Ill. 426, and held that the passage of an ordinance by the village of Glencoe, locating

a route over and across private property, did not author-
ize the railway company to follow such route or take
private property along it. The same rule must be ap-
plied here, and the action of the city of Geneva must be
held a nullity so far as establishing a route for the street
railway is concerned.

Again, the ordinance does not, in its provisions, at-
tempt to exercise a power of location. The provision as
to each part of the proposed route is conditioned upon
the consent of the owner or owners of the private prop-
erty. The railway company is not authorized to adopt
the location by virtue of the ordinance or upon proof of
the necessity contemplated by the statute, but the ordi-
nance requires the consent of the owner of each piece of
property. If the ordinance was an attempt to exercise
a supposed legislative power, it was also an attempt to
delegate that power to a few individuals who could not
exercise it. The ordinance also provides that the rail-
way company may make the location subject to such
further conditions as may be imposed by ordinance when
the railway company shall adopt the route, and that the
ordinance is not to be construed as a grant of rights
in any street, but the determination whether such rights
shall be granted is reserved until a petition for the same
shall be presented by the railway company. The ordi-
nance simply amounts to a prohibition against going
over the property of plaintiffs in error where we had
held the road might lawfully go. It prohibits the rail-
way company from going over this private property and
orders it to go on another route, but reserves the right
to say in the future whether it shall take the other route
or what further conditions shall be imposed. That is
neither a location nor the provision for one. Not only
is there no grant of a right to go upon or along the
streets on which the ordinance professes to provide for
a location, but the city council had no right to make or
provide for any location or to grant any such right un-

less at least ten days' public notice of the time and place of presenting the petition should be first given by publication in some newspaper. Section 3 of the act in regard to horse and dummy railroads provided, and the present statute governing street railroads provides, that no consent shall be granted unless such notice shall be given. That provision was construed in *Metropolitan City Railway Co.* v. *City of Chicago,* 96 Ill. 620, and it was held the statute intended to give every person interested opportunity for a fair and impartial hearing whether a street should be occupied by a street railway, and that action without such a petition and public hearing was void.

In the case of corporations organized under the act for the incorporation of railroad companies the power is given to select their own routes and to lay out, locate and construct their lines of railway. In case a city provides for the location of such a railroad, the corporation may adopt the location and take the necessary property therefor. Paragraph 25 relates to such general or commercial railroads, and we have so applied it. (*Chicago and Western Indiana Railroad Co.* v. *Dunbar,* 100 Ill. 110; *Tudor* v. *Rapid Transit Railroad Co.* 154 id. 129.) As to street railways there are other specific provisions. Section 4 of article 11 of the constitution is as follows: "No law shall be passed by, the General Assembly granting the right to construct and operate a street railroad within any city, town or incorporated village, without requiring the consent of the local authorities having the control of the street or highway proposed to be occupied by such street railroad." Paragraph 24 of said section 1 of article 5 of the act for the incorporation of cities and villages relates to street railways, and section 3 of the act in regard to horse and dummy railroads, under which petitioner proceeded, provided: "No such company shall have the right to locate or construct its road upon or along any street or alley, or over any public ground in any incorporated city, town or village, without the con-

sent of the corporate authorities of such city, town or village." These provisions gave the city council control of the location of street railways in the streets and alleys of the city and cover the entire subject, while the right to deflect from the street is given by the statute in case of necessity. In *Dewey* v. *Chicago and Milwaukee Electric Railway Co. supra*, we said (p. 434): "The village authorities may refuse to consent to the use of their streets and alleys by a street railway corporation, but their consent or refusal to the use of their streets is the extent of their power. They control the streets, alleys and public grounds of the village, but they do not control private property. Any attempt of the village authorities, by consenting to a particular location of a street railroad across private property, to cause the street railroad to diverge from the streets, alleys and public grounds under their control, is void, and confers no right and creates no necessity." The ordinance in terms prohibits the present route of the railway company, while a part of the road had already been constructed in Sixth street and Campbell street under the prior ordinance. The evidence shows that the grant was for an adequate consideration, and it was accepted and the conditions performed by the railway company, so that the ordinance ceased to be a mere license and became a valid and binding contract. Where a license is acted upon in a substantial manner, so that to revoke it would be inequitable or unjust, or where it is for an adequate consideration accepted by the grantee, it becomes a binding contract. (*City of Belleville* v. *Citizens' Horse Railway Co*. 152 Ill. 171.) The ordinance must be held void.

After crossing the lands of plaintiffs in error the line of the railway between said lands and the south end of Sixth street crosses Batavia avenue and the intersection of Cheever and Shady avenues. It may be gathered from the entire record that defendant in error obtained a right to lay its tracks in Sixth street and Campbell street and

built its railway therein, but that it never obtained consent to cross said avenues. That condition, however, existed at all times and on both occasions when the case has been before us. If that fact was a valid reason against taking property of plaintiffs in error and for dismissing the petition it should have been alleged. On those hearings it was the duty of plaintiffs in error to allege, on the first hearing, any reason why the petition should have been dismissed, and on the second hearing, any fact which would support the action of the court in dismissing the same. The fact existed then if it exists now, and is one which might have been raised and determined. The previous decisions of the court concerning the right to take the property of plaintiffs in error settled every question which might have been raised and every objection that might have been made, whether then raised and made or not. The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also extends to any other matter which might have been raised and determined in it. (*Hamilton* v. *Quimby,* 46 Ill. 90; *Rogers* v. *Higgins,* 57 id. 244; *Kelly* v. *Donlin,* 70 id. 378; *Ruegger* v. *Indianapolis and St. Louis Railroad Co.* 103 id. 449; *Gage* v. *Ewing,* 107 id. 11; *Scates* v. *King,* 110 id. 456; *Harmon* v. *Auditor of Public Accounts,* 123 id. 122.) The decision when the case was last here, that the defendant in error had a right to locate and construct its road across the property of plaintiffs in error, is *res judicata,* and determined the right, as between them, arising out of all facts which then existed.

If, however, the question whether the consent of the city to cross these avenues is a condition precedent to the right of condemnation be considered, the rule is that it is not such a condition. The Metropolitan City Railway Company was organized under the same act as defendant in error, and located its tracks in Lake and Canal streets, in the city of Chicago, and filed its petition to condemn the property right, interest or privilege of the

Chicago West Division Railway Company in said streets. The defendant set up that the petitioner had not acquired the right to locate, construct and operate its railroad in said streets, and the proceeding was dismissed out of the circuit court. The judgment was reversed in this court, although it related to an interest in the street itself which the petitioner was desirous of appropriating. The parties were governed by the same law as in this case. It was held that the question whether the petitioner had obtained the privilege to occupy the street was immaterial, and it was said (p. 321): "The authority to exercise the right of eminent domain is derived solely from the State, and in this instance it is conferred by the act cited, in relation to horse and dummy railways. Obtaining consent of the common council of the city to laying the track of petitioner's railway in any given street is not a condition precedent to condemning such property right, interest or privilege as defendant may have previously acquired, by contract or otherwise, in such streets. That consent may, with equal propriety, be obtained afterwards, and it is immaterial when it is secured. The granting of such consent is always a matter of discretion with the municipal authorities. At most, it is a mere license granted by the owner of the fee of the streets, and is revocable any time before it is acted upon. No matter what conclusion may be reached as to the legality of the ordinance, it is not a question that in any degree affects petitioner's right to condemn the property of defendant, or any one else, for the purposes of its organization, and we forbear to remark upon the numerous objections urged against its validity." *Metropolitan City Railway Co.* v. *Chicago West Division Railway Co.* 87 Ill. 317.

This decision would seem to settle the question that the want of power to cross Batavia avenue, or any other street or avenue, or the fact that permission to cross the same had not been granted, would not prevent the condemnation. The property of plaintiffs in error is crossed

before reaching Batavia avenue or the intersection of Shady and Cheever avenues. The taking or crossing of their property does not involve the taking or crossing of any street or avenue, but the question whether defendant can cross those avenues will arise, if at all, after crossing their property. So far as the question of defendant in error being able to return to the street or highway after deflecting therefrom is concerned, the fact is that it will reach Batavia avenue whether consent to cross it is granted or not. If that should be the terminus of the road, it will be at a public street with public access and the accommodation of street travel from that point.

In the case of a general or commercial railroad, which could not construct its railroad upon or across a street in a city without the assent of such city, it was held that such assent was not a pre-requisite to the power to condemn private property within the city. (*Chicago and Western Indiana Railroad Co.* v. *Dunbar, supra.*) In that case the superior court of Cook county enjoined proceedings begun for the condemnation of land belonging to Dunbar, and the decree was reversed by this court. It was held not to be a defense for owners of private property that consent to the construction of the road across streets had not been given, and the court said (p. 129): "The law has provided one mode of acquiring the right of way across private property and another mode of acquiring the right of way across streets, but the law has in no way provided the order in which the railway company shall proceed in acquiring its right of way."

The judgment of the circuit court is affirmed.

*Judgment affirmed.*