# United States Court of Appeals
# for the Federal Circuit

_____

**CUMMINS, INC.,**
*Plaintiff-Appellant,*

**v.**

**TAS DISTRIBUTING COMPANY, INC.,**
*Defendant-Appellee.*

_____

2010-1134

_____

Appeal from the United States District Court for the Central District of Illinois in case no. 09-CV-1096, Judge Joe Billy McDade.

_____

Decided: December 5, 2012

_____

JEANNE M. GILLS, Foley & Lardner, LLP, of Chicago, Illinois, argued for the plaintiff-appellant. With her on the brief were JONATHAN R. SPIVEY and AARON J. WEINZIERL.

CRAIG L. UNRATH, Heyl, Royster, Voelker & Allen, of Peoria, Illinois, argued for the defendant-appellee. With him on the brief were KAREN L. KENDALL and TIMOTHY L. BERTSCHY. Of counsel was JACOB D. KOERING, Freeborn & Peters, LLP, of Chicago, Illinois.

_____

Before NEWMAN, BRYSON, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Since 2003, Cummins, Inc. ("Cummins") and TAS Distributing Company, Inc. ("TAS") have been engaged in three separate actions regarding idle-control technologies for heavy-duty truck engines. In the latest, filed in 2009, Cummins sought a declaratory judgment that claims of TAS's U.S. Patent Nos. 5,072,703 ("the '703 patent") and 5,222,469 ("the '469 patent") (collectively "the TAS patents") are invalid and unenforceable. The present appeal challenges the summary judgment determination of the district court, which found that Cummins' declaratory judgment suit against TAS is barred by the doctrine of *res judicata* in light of an earlier litigation. *Cummins, Inc. v. TAS Distributing Co.* (*TAS III*), 676 F. Supp. 2d 701 (C.D. Ill. 2009). We agree that Cummins could have pursued claims regarding invalidity and unenforceability of the TAS patents in prior litigation, which featured the same parties, arose from the same group of operative facts, and resulted in a final resolution on the merits. Because *res judicata* bars Cummins' defenses under 35 U.S.C. §§ 102 and 103 in the present case, we *affirm*.

## I. Background

### A. Parties and Technology

TAS, an Illinois corporation headquartered in Peoria, invented, developed, and marketed its patented technology that automatically turns a diesel engine on or off under certain circumstances. The technologies claimed in the '703 patent, entitled "Apparatus for the Automatic Starting, Running, and Stopping of an Internal Combustion Engine," and the '469 patent, entitled "Apparatus for Monitoring an Internal Combustion Engine of a Vehicle," were incorporated by TAS into systems called "Temp-A-

Start" and "Temp-A-Stop." Each system came in two varieties: an "ECM" or "One-Box" version incorporated in new engines and a "Retrofit" or "Two-Box" version installed in existing engines.

Cummins, a large Indiana corporation that manufactures truck engines, approached TAS about licensing its TAS system technologies. In 1996, Cummins wrote to TAS forecasting sales of 4,000 TAS systems in the first year, 10,000 systems in the second year, "and beyond." Joint App'x at 343. Cummins was especially interested in the "Temp-A-Start" system because of its purported ability to automatically start and stop the engine in response to different inputs, for example: oil temperature; engine block temperature; battery condition; electrical signals, such as cabin thermostat; and alerts from accessories, such as electric blankets, battery warmers, and fuel tank heaters. Subsequently, the parties entered into licensing agreements, including the February 1997 Master License Agreement which is the focus of this appeal.

### B. Master License Agreement

The dispute in this case has its basis in the February 1997 agreement between the TAS and Cummins (hereinafter "the Master License Agreement"), which granted Cummins the co-exclusive right to use technology owned or licensed by TAS relating to the "Temp-A-Start" and "Temp-A-Stop" systems, including the TAS patents. Cummins agreed under the terms of the Master License Agreement to pay a minimum $1 million royalty over five years, as well as an ongoing royalty of $50 to $125 per unit sold of the licensed products. Cummins could elect to terminate its rights to utilize the TAS technology after the fifth year. In addition, Cummins was required to maximize royalties: "Licensee shall make all reasonable efforts to market and sell [the TAS products] so as to

maximize the payment of royalties to Licensor under this License Agreement." Joint App'x at 99.

With the Master License Agreement in force, Cummins integrated both the "Temp-A-Start" and the "Temp-A-Stop" technologies into its own "ICON" product line. Cummins printed advertising literature and displayed its ICON products at industry trade shows. The "Temp-A-Start" technology, however, purportedly proved unreliable, and sales were lackluster and substantially below the optimistic forecasts Cummins had reported to TAS. Although Cummins averaged annual sales of fewer than 200 ICON products, Cummins paid TAS the full $1,000,000 minimum royalty.

## C. *TAS I*

In February 2003, TAS filed a declaratory judgment action in the United States District Court for the Central District of Illinois, alleging that Cummins had breached the Master License Agreement by failing to make "all reasonable efforts" to market and sell the TAS technology. *TAS Distrib. Co. v. Cummins Engine Co.* (*TAS I*), 491 F.3d 625, 630 (7th Cir. 2007).[1] In total, the complaint in *TAS I* set forth twelve counts, including claims for breach of contract and a demand for specific performance. *Id.* at 627. Cummins maintained that it made reasonable efforts. It also filed a counterclaim, alleging that its obligation to pay royalties under the Master License Agreement was set to expire on March 31, 2003. *See TAS Distrib. Co. v. Cummins Engine Co.*, No. 03-1026, slip op. at 4 (C.D. Ill. Jan. 21, 2005), *aff'd*, 491 F.3d 625 (7th Cir. 2007).

---

[1] Cummins Engine Company, Inc. is now known as Cummins, Inc.

At the close of discovery, Cummins moved for summary judgment and TAS cross-moved for partial summary judgment. *TAS I*, 491 F.3d at 627. On January 21, 2005, the trial court granted Cummins' motion for summary judgment. *Id.* at 629-30. The court found that genuine issues of triable fact existed as to whether Cummins had employed reasonable efforts in selling engines incorporating the TAS technology under the Master License Agreement, but that TAS had failed to present any proof of its damages. *Id.* at 630. The district court rejected as speculative the pre-contract sales forecasts in which Cummins estimated how many units it could sell on an annual basis and an unverified affidavit from TAS's CEO purporting to show how many units a previous licensee had sold. *Id.* at 636. The district court also declined to order specific performance of Cummins' obligations under the "all reasonable efforts" clause, finding that TAS would have an adequate remedy should Cummins violate future obligations under the Master License Agreement. *Id.* at 630. The district court granted TAS's cross-motion for partial summary judgment, ruling that Cummins had a continuing contractual obligation extending beyond March 31, 2003 to make the per-unit royalty payments for ongoing sales. On appeal, the Seventh Circuit affirmed the *TAS I* decision. *See id.* at 625, 638.

## D. *TAS II*

On May 31, 2007, TAS filed a second suit in Illinois. *See TAS Distrib. Co. v. Cummins Inc.* (*TAS II*), No. 07-cv-1141 (C.D. Ill.). In *TAS II*, TAS claimed that Cummins breached the Master License Agreement by failing to pay royalties on all of Cummins' products that incorporated TAS technology. *See TAS III*, 676 F. Supp. 2d at 704. There was no dispute that Cummins made the minimum payment of $1 million, but TAS alleged that Cummins had not paid royalties on sales of 13,681 Retrofit units

from April 1, 1998 to April 30, 2010, which amounted to approximately $1,400,000 in unpaid royalties. TAS claimed that Cummins failed to provide TAS with the monthly reports of sales of products as required under the Master License Agreement. TAS also asserted that Cummins had put its own "ISF Plus System" into its products, rather than TAS's licensed system, and owed royalties under the Master License Agreement for the TAS technology that was substituted.

Discovery in *TAS II* included issues on the scope of TAS's patented technology. In March 2009, Cummins deposed Mr. Loran Sutton, the sole named inventor of the TAS patents. During his deposition, the inventor admitted that a version of Temp-A-Start had been sold to another manufacturer, Bosch Trucking Company, in the mid-1980s, well before the critical dates of the '469 and '703 patents.[2] *See* Joint App'x at 133-135. This was consistent with Mr. Sutton's deposition testimony taken in *TAS I* on February 11, 2004. Joint App'x at 417-418. He also revealed that none of the prior sales or marketing efforts had been disclosed to the Patent and Trademark Office during prosecution of the TAS patents.

Based on the discovery of the prior sales, Cummins decided to challenge the validity and enforceability of the TAS patents licensed under the Master License Agreement. Cummins sought leave to amend its Answer to include patent-based affirmative defenses and counterclaims related to the prior sales of the TAS technology. In an April 9, 2010 order, the district court prevented Cummins from pursuing those claims on the grounds that

---

[2] The '703 patent issued on December 17, 1991, from an application filed on October 16, 1990; the '469 patent issued on June 29, 1993 from an application filed on June 9, 1992.

"[s]uch claims are clearly barred by *res judicata*: the claims should have and could have been brought in *TAS I*." *See TAS II*, 2011 U.S. Dist. LEXIS 126349, at *5 (C.D. Ill. Nov. 1, 2011).

## E. *TAS III*

On March 18, 2009, Cummins initiated *TAS III*. In *TAS III*, Cummins sought to have the trial court: (1) dismiss TAS's suit in *TAS II*; (2) declare the '703 and '469 patents invalid under 35 U.S.C. §§ 102 and 103; (3) declare the Master License Agreement void for patent misuse; (4) declare that TAS engaged in patent misuse for improperly enforcing the TAS patents; (5) declare the '703 and '469 patents unenforceable due to inequitable conduct; and (6) rescind the Master License Agreement in its entirety. *TAS III*, 676 F. Supp. 2d at 704; Joint App'x 255-262.

Cummins relied on three main arguments. First, that products embodying Temp-A-Start or Temp-A-Stop technologies were sold as early as 1986, more than a year before the filing dates of the TAS patents, and that these sales were not disclosed to the PTO. Second, that the actual inventor of the '469 patent was not Mr. Loran Sutton, but his brother, and that this fact was not disclosed to the PTO. And third, that there is a three year gap in the chain of title of the '703 patent such that there was no right to assign it. *TAS III*, 676 F. Supp. 2d at 704-05 & nn.3-4. Each of these facts is alleged to have occurred prior to or during the process of obtaining the patents, which was prior to *TAS I*. *Id*. at 705.

On November 30, 2009, the district court granted TAS's motion for summary judgment effectively barring all of Cummins' claims for declaratory relief on the basis of the doctrine of *res judicata*. *Id*. at 703. The district court noted that:

> The validity of the contracts was, though implicitly, an operative fact in *TAS I*. Cummins certainly could have contested, as either a defense or a counterclaim, the validity of the contracts and the patents that it asserts underlie the contracts in *TAS I*, and if successful, Cummins' claims would have defeated TAS' suit in *TAS I*. These factual assertions are certainly related in time, space, origin, and motivation to the breach of contract at issue in *TAS I*; they would have formed a convenient trial unit with *TAS I*'s factual issues; and a decision on the validity of the underlying contract would have conformed to standard expectations in a breach of contract dispute.

*Id.*

Cummins claimed an equitable exception to *res judicata* on the grounds that TAS made contractual misrepresentations that prevented Cummins from raising the patent-based defenses in *TAS I*. *Id.* at 713. The trial court rejected this argument, relying on testimony and evidence showing that Cummins was informed prior to *TAS I* that TAS had sold potentially invalidating variants of the Temp-A-Start system since the 1980s. *See id.* at 715-17. Specifically, internal minutes of an October 22, 1996 meeting between TAS and Cummins executives contained the following statement: "TAS has been in production with variants of the system since 1985, and have [sic] shipped 3000-4000 units." *Id.* at 715; Joint App'x at 362. Cummins did not dispute the authenticity of these minutes, which were recorded by its own employee. In addition, the district court pointed out that Mr. Sutton testified at his deposition in *TAS I* that Temp-A-

Start was first marketed and sold around 1986.[3]  *See* Joint App'x at 417.  The district court found that the prior sales were known to Cummins and created a duty of due diligence under Illinois law, and that Cummins "could not close its eyes to the possibility, revealed in the 1986 sales, that the patents might be subject" to challenge.  *TAS III*, 676 F. Supp. 2d at 716.  The district court concluded that it "was not convinced, even when all the evidence is viewed in the light most favorable to Cummins, that TAS had made any misrepresentations that prevented Cummins from asserting its patent invalidity claim in *TAS I*." *Id*. at 715.  The district court held that as a matter of law, Cummins' *TAS III* suit was precluded by the doctrine of *res judicata*, and terminated the case.  Cummins timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. Discussion

### A. Standard of Review and Choice of Law

This court reviews a district court's grant of summary judgment under the law of the regional circuit in which the district court sits, which in this case is the Seventh Circuit.  *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011).  The Seventh Circuit reviews a district court's grant of summary judgment *de novo*.  *Staats v. County of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000).  Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a

---

[3]    TAS still denies that a stand-alone Temp-A-Start system was sold as early as 1986.  TAS admits only that a version of Temp-A-Start was on sale, which, it asserts, "did not satisfy all claims in the '703 patent."  Joint App'x at 290–92.

motion for summary judgment, the court must view the record evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.,* 565 F.3d 365, 368 (7th Cir. 2009).

Whether a claim is barred by *res judicata* is a question of law reviewed by appellate courts *de novo. See, e.g.*, *Accumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008). Because this court applies the law of the regional circuit where general principles of *res judicata* are at issue, Illinois state law governing *res judicata* applies in this case. *See id.*; *Media Tech. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003). The *res judicata* effect of a prior judgment of a federal court sitting in federal diversity is determined by the law of the state in which the court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

## B. *Res Judicata*

*Res judicata*, also known as "claim preclusion," operates in Illinois to prevent a party from bringing suit to resolve claims that were or could have been decided in a prior action. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 896 (Ill. 1998). Three conditions must pertain before Illinois state courts will bar a later suit based on *res judicata*: a court of competent jurisdiction must have rendered a final judgment on the merits in an earlier suit; the earlier and later suits must involve the same causes of action; and the two suits must involve the same parties or their privies. *Id.* at 889. The doctrine of *res judicata* "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id.* at 889; *see also Corcoran-Hakala v. Dowd*, 840 N.E.2d 286, 290 (Ill. App. Ct. 2005) (observing that *res judicata* extends to all matters, including those that could have been offered).

Illinois courts have consistently held that the bar of *res judicata* extends not only to questions actually decided, but also to all defenses and counterclaims, which might have been presented in the prior litigation. *See, e.g., Leitch v. Hine*, 66 N.E.2d 90, 95 (Ill. 1946); *Bacon v. Reichelt*, 111 N.E. 565, 566 (Ill. 1916); *Harvey v. Aurora & Geneva Ry. Co.*, 57 N.E. 857, 861 (Ill. 1900); *Neff v. Smyth*, 111 Ill. 100, 110 (1884); *Cabrera v. First Nat'l Bank of Wheaton*, 753 N.E.2d 1138, 1145 (Ill. App. Ct. 2001).

## C. Arguments

Cummins presents three main questions on appeal challenging the trial court's application of *res judicata*: (1) whether the trial court's basis for jurisdiction in *TAS I* was such that its judgment could have preclusive effect over subsequent patent-based defenses; (2) whether *TAS I* and *TAS III* are based on the same set of transactional facts; (3) whether exceptions to the application of the *res judicata* are available to Cummins. We address each of these questions in turn.

### 1. Jurisdictional Basis of *TAS I*

Cummins argues that *res judicata* cannot apply in this case because the district court in *TAS I* lacked proper subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to hear issues regarding patent invalidity and unenforceability. Cummins argues that because there was no case or controversy regarding infringement in *TAS I* due to its continued royalty payments, there could not have been declaratory judgment jurisdiction to adjudicate defenses to infringement. We find no jurisdictional bar that would have prevented Cummins from asserting its patent-based defenses in response to TAS's declaratory judgment action in *TAS I*, notwithstanding that Cummins continued making royalty

payments. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130 (2007) (citing *Altvater v. Freeman*, 319 U.S. 359 (1943)) ("[A] licensee's failure to cease its payment of royalties d[oes] not render nonjusticiable a dispute over the validity of the patent."). In addition, regardless of whether Cummins could have sought affirmative relief in *TAS I* in the form of a declaratory judgment counterclaim, it plainly could have raised its patent-based defenses in response to TAS's contract claims, but it did not do so.[4]

### 2. Transactional Test

Illinois has adopted a three-prong test to determine the applicability of *res judicata.* Cummins concedes that "[t]here is no dispute as to identity of parties, nor that *TAS I* represents a final judgment on the merits." Appellant's Br. at 19. Thus, the first and third prong of the Illinois *res judicata* test—requiring a final judgment on the merits and two suits involving the same parties or their privies—are satisfied. The gravamen of Cummins' appeal centers on the second prong of the *res judicata* test—whether the causes of action in *TAS I* and *TAS III* are the same. Cummins asserts that they are not thereby precluding any *res judicata* effect.

To determine whether causes of action are the same for preclusion purposes, the Illinois Supreme Court adopted the "transactional test" articulated in the Restatement (Second) of Judgments. *River Park*, 703 N.E.2d at 892-93. Under the transactional test, "separate claims [are] considered the same cause of action for purposes of

---

[4]    TAS argues that Cummins raises for the first time before this court certain arguments, including the jurisdictional argument, which we should deem waived. We find all of Cummins' arguments against applying *res judicata* unpersuasive, so we do not reach the issue of waiver.

*res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 893. The Supreme Court of Illinois has affirmed that a claim is extinguished under these principles, "even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action." *Id.* (quoting Restatement (Second) of Judgments § 25, at 209 (1982)).

### a. Same Operative Facts

Cummins asserts that the operative facts in *TAS III* are too dissimilar to those at issue in *TAS I* to have preclusive effect. Cummins argues that *res judicata* cannot apply because the present matter relates to patent invalidity, misuse, and unenforceability, whereas the prior case dealt only with enforcing the "all reasonable efforts to market and sell" under the Master License Agreement. Cummins cites non-authoritative statements and cases from other jurisdictions in support of a more forgiving articulation of what constitutes the same cause of action than as defined under Illinois law. *See, e.g.*, Appellant's Br. at 23 (citing as "instructive" *Andersen v. Chrysler Corp.*, 99 F.3d 846 (7th Cir. 1996) (applying Wisconsin law)).

We find *River Park* controlling. The court in *River Park* held that "different kinds or theories of relief still constitute[] a single cause of action if a single group of operative facts give rise to the assertion of relief." *River Park*, 703 N.E.2d at 891. Hence, "operative facts" are not just those supporting the first judgment, but all "facts that give rise to plaintiffs' right to relief." *Id.* at 892 (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 338–39 (1996)).

The district court in *TAS III* found that the validity of the Master Agreement was, though implicitly, an operative fact in *TAS I* and that Cummins could have contested, either as a defense or counterclaim, the validity of the Master Agreement and the patents that it asserts underlie the agreement in *TAS I*. If successful, Cummins' claims would have defeated TAS's suit in *TAS I*. Further, Cummins' claims of invalidity and unenforceability of the TAS patents, if proven, would impair the judgment in *TAS I* that Cummins has a continuing obligation to pay ongoing royalties under the License Agreement after March 2003.

We conclude that the district court's decision is within the Illinois standard for *res judicata* as announced by *River Park*. Cummins elected not to assert the defenses despite that if argued and won, the defenses would have been a complete defense in *TAS I*. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235-36 (7th Cir. 1986) (applying Illinois law to find former defendants barred from bringing a claim that would have been a complete defense to the prior action). The onus was on Cummins under Illinois state law to raise the defenses at that time or forfeit their use at a later time. *See Cabrera*, 324 Ill. App. 3d at 94 ("[U]nder Illinois law no counterclaims are classified as compulsory; however, this does not preclude the application of *res judicata*." (internal citations omitted)); *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) ("[W]hat is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action."). Illinois courts have determined not to engage in "piecemeal presentation of defenses," and we give deference to this sound policy. *Henry*, 808 F.2d at 1234.

Cummins points to three considerations mentioned in *River Park* it claims disfavor finding a common cause of action in this case: "[1] whether the facts are related in time, space, origin, or motivation, [2] whether they form a convenient trial unit, and [3] whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *River Park*, 703 N.E.2d at 893. The district court considered each of these considerations and found them unhelpful to Cummins. *TAS III*, 676 F. Supp. 2d at 708. We find no error in the district court's analysis or conclusion.

Cummins also argues that its patent misuse claims are not subject to preclusion because *Mercoid Corp. v. Mid-Continent Investment Co.*, 320 U.S. 661 (1944), stands for the proposition that *res judicata* does not apply to a claim of patent misuse even if that claim could have been raised in an earlier action. The *Mercoid* case, however, is much narrower than Cummins suggests. In *Mercoid*, the patentee sought an injunction against infringement of its patent, and the accused infringer defended based in part on a claim of patent misuse. In response to the patentee's assertion that *res judicata* foreclosed the accused infringer from raising patent misuse as a defense, the Supreme Court held that a court of equity cannot be foreclosed from exercising its discretion to deny injunctive relief because of "the failure to interpose the same defense in an earlier litigation." 320 U.S. at 670.

The Supreme Court's *res judicata* discussion makes it clear that *Mercoid* is different from this case. Unlike in *Mercoid*, the district court in this case was not asked to enforce a patent through the issuance of an injunction; instead, the licensee has sought to invalidate a license agreement—and thus relieve itself of any ongoing obligation to pay royalties—based on a theory of license invalid-

ity that could have been raised in an earlier suit on the same contract. The justification for holding *res judicata* inapplicable in *Mercoid* is thus absent here. *See Glitsch, Inc. v. Koch Eng'g Co.*, 216 F.3d 1382, 1386 (Fed. Cir. 2000) (concluding that *Mercoid* allows the assertion of patent misuse, in a second action, as a defense against infringement or in a request for declaratory relief, but it "does not justify allowing a party to launch a collateral attack on a ruling in the first action, the effect of which would be to alter the judgment in that action"). In this case, the sole purpose of Cummins' patent misuse claims is to defeat TAS's claims for contract damages. Similar to the claims related to invalidity and unenforceability, the district court correctly determined that the patent misuse defense is barred by *res judicata*. Therefore, under Illinois law, *res judicata* bars Cummins' present suit.

### b. Nullification of *TAS I*

Cummins argues that the district court erred when it concluded that allowing Cummins to assert invalidity defenses would risk nullification of the judgment in *TAS I*. Cummins suggests that nullification would not apply because a defendant is not required to bring all available counterclaims in a prior action absent a compulsory counterclaim rule. Cummins contends that nullification of *TAS I* would be impossible because it, and not TAS, was the prevailing party in *TAS I*.

The risk of inconsistent decisions is a longstanding concern of the judiciary. *See Alvear-Velez v. Muskasey*, 540 F.3d 672, 677 (7th Cir. 2008) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). Courts routinely refuse under Illinois law to "either nullify the earlier judgment or impair the rights established in the earlier action." *Corcoran-Hakala,* 840 N.E.2d at 290; *accord Henry*, 808 F.2d at 1235-36. In *Henry*, the Seventh

Circuit did not allow the defendant in an earlier breach of contract action to bring a later action that, if successful, would have voided the contract.

Here, the district court found the potential nullification of the *TAS I* judgment a sufficient basis for applying *res judicata*, noting that it had found the contract valid. We need not decide whether Cummins' allegations would nullify the district court's judgment because those claims rely on the predicate determination that the patents are invalid or unenforceable, a holding which would impair the judgment from *TAS I* that established TAS's continuing right to receive royalties. *Cf. Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1328 (Fed. Cir. 2008) ("[A] defendant who fails to assert counterclaim in the first action may not later maintain an action on that claim if 'successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.'") (quoting Restatement (Second) of Judgments § 22(2)(b)).

The district court explained that a defendant who may assert a counterclaim, but fails to do so, is precluded from bringing a subsequent action based on that counterclaim if nullification were to result. *See id.* at 707 & n.8 (citing the "common law compulsory counterclaim rule" in *Corcoran-Hakala*, 840 N.E.2d at 293-94); *see also* Restatement (Second) of Judgments § 22(2)(b). Here it is clear that the claims asserted by Cummins were proper defenses to the claims litigated in *TAS I*. Additionally, Cummins' invalidity and unenforceability claims, if proven, would impair the rights TAS received in *TAS I*, which obligated Cummins to make ongoing royalty payments under the License Agreement. As a result, such claims are barred under *res judicata*.

We disagree that in *TAS I* Cummins was the prevailing party. The district court found that TAS was owed a continuing royalty beyond May 2003 and entered judgment against Cummins.

### 3. Exceptions

Cummins argues that certain exceptions to *res judicata* apply in this case: a declaratory judgment exception, and a misrepresentation exception. We agree with the district court's ruling that the declaratory judgment exception does not apply under Illinois law. *TAS III*, 676 F. Supp. 2d at 711.

Further, Cummins asserts that TAS made misrepresentations in the course of this continued dispute, which prevented Cummins from becoming aware that it possessed invalidity and unenforceability defenses. The district court considered Cummins' misrepresentations argument and, despite viewing the evidence in a manner most favorable to it, determined that Cummins was aware of the basis for the invalidity and unenforceability claims during the course of the *TAS I* discovery, which rendered a misrepresentation exception inapplicable. *Id.* at 712-17. We discern no error in the district court's analysis.

### III. Conclusion

We find Cummins' claims in *TAS III* are barred by the doctrine of *res judicata*, and affirm the district court's grant of summary judgment in favor of TAS.

### **AFFIRMED**

### Costs

No Costs.